1 RICHARD F. HOLLEY, ESQ.
Nevada Bar No. 3077
2 E-mail: rholley@nevadafirm.com
ANDREA M. GANDARA, ESQ.
3 Nevada Bar No. 12580
E-mail: agandara@nevadafirm.com
4 HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
5 400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
6 Telephone: 702/791-0308

7 *Attorneys for Plaintiffs Gary Tai,*
*ShuiKee Company Limited, and Golden Essence Global Limited*

8

9                    **UNITED STATES DISTRICT COURT**

10                          **DISTRICT OF NEVADA**

| | |
|---|---|
| 11 Gary Tai, ShuiKee Company Limited, and Golden Essence Global Limited, | |
| 12 | Case No.: |
|         Plaintiffs, | **Verified Complaint** |
| 13 | |
|         v. | |
| 14 | |
| 15 JC Funding-5, LLC, Jeff N. Crossland, D-Design LNO Inc., Leslie Dotson, Does I-X, and Roes Corporation I-X, | |
| 16 | |
|         Defendants. | |
| 17 | |

18      Plaintiffs Gary Tai ("Tai"), ShuiKee Company Limited ("ShuiKee"), and Golden

19 Essence Global Limited ("Golden Essence") (collectively, the "Plaintiffs"), by and through

20 counsel of record, the law firm Holley Driggs Walch Fine Wray Puzey & Thompson, hereby

21 complains against Defendants JC Funding-5, LLC ("JC Funding"), Jeff N. Crossland

22 ("Crossland"), D-Design LNO Inc. ("D-Design"), and Leslie C. Dotson ("Dotson")

23 (collectively, the "Defendants") as follows:

24                              **PARTIES**

25      1.      Tai is a foreign citizen from Hong Kong SAR.

26      2.      ShuiKee is a corporation organized under the laws of Hong Kong SAR.

27      3.      Golden Essence is a corporation organized under the laws of Hong Kong SAR.

4.     Upon information and belief, JC Funding is a Missouri limited liability company conducting business in Clark County, Nevada.

5.     Upon information and belief, Crossland is, and at relevant times was, a member and manager of JC Funding and a California citizen conducting business in Clark County, Nevada.

6.     Upon information and belief, D-Design is a Nevada corporation conducting business in Clark County, Nevada.

7.     Upon information and belief, Dotson is, and at all relevant times was, the President, Secretary, Treasurer, and sole Director of a D-Design and a California citizen conducting business in Clark County, Nevada.

8.     The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants herein designated as Does I through X and Roe Corporations I through X, inclusive, are not known at this time and are therefore named as fictitious defendants.  This Complaint will be amended to allege the true names and capacities of Does I through X and Roe Corporations I through X when their true names and capacities are ascertained.

## **JURISDICTION AND VENUE**

9.     This Court has jurisdiction under 28 U.S.C. §1332(a)(1), because Plaintiffs and all Defendants are citizens of different states and the amount in controversy herein exceeds $75,000.00.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the Defendants regularly conduct business in this judicial district, and D-Design is a citizen of this judicial district, and the conduct alleged in this Complaint took place in this judicial district.

11.     Exercise of personal jurisdiction over Defendants is reasonable as Defendants have had substantial, continuous and systematic contacts with the State of Nevada, and/or Defendants have purposefully directed their activities to residents of the State of Nevada, which activities have given rise to the claims alleged by Plaintiffs herein, which Defendants knew or should have known would cause harm to Plaintiffs as alleged herein.

## GENERAL ALLEGATIONS

12.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

13.     In or about September 2013, Dotson approached Tai regarding an investment opportunity through which a new entity, D-Design, would be formed for the purpose of (1) acquiring a controlling interest in GoLink (China) Limited ("GoLink"), a Hong Kong corporation that is owned by Tai, and (2) to acquire the existing business of Fabrique Ltd. ("Fabrique"), a Connecticut corporation (the "Transaction"). These companies engaged in, among other things, marketing and selling cases, sleeves, bags, backpacks, messenger bags, luggage, laptop cases, suitcases, brief cases and other similar goods.

14.     To facilitate the Transaction, Dotson and Crossland represented to Tai in or around October 2013 that Dotson would create D-Design to acquire GoLink and Fabrique with Crossland, through his company JC Funding, to be the lender for this Transaction. Dotson was the orchestrator of the Transaction and was to be the President of D-Design.

15.     In order to effectuate the Transaction proposed by Dotson and Crossland, Dotson and Crossland asked Tai to contribute $1.9 million to facilitate the loan funding.

### THE STOCK PURCHASE AGREEMENT

16.     On April 30, 2014, GoLink, D-Design, Golden Essence Global and Tai entered into a Stock Purchase Agreement.

17.     The Stock Purchase Agreement was later amended pursuant to that certain First Amendment to Stock Purchase Agreement dated July 8, 2014, and pursuant to that certain Second Amendment to Stock Purchase Agreement dated October 14, 2014 (collectively referred to as the "Stock Purchase Agreement"). A true and correct copy of the Stock Purchase Agreement is attached as **Exhibit "1"**. Pursuant to the Stock Purchase Agreement, D-Design agreed to purchase the shares of GoLink stock from Golden Essence for $2 million (the "Purchase Price").

18.     The Stock Purchase Agreement required D-Design to pay the Purchase Price in phases, with the first payment of $1,850,000 to be paid within 120 days after the closing date of financing (the "First Installment"). The remaining $150,000 was to be paid on the first anniversary of the date of the Stock Purchase Agreement (the "Second Installment").

19.     Section 28 of the Stock Purchase Agreement describes the events of termination of the Stock Purchase Agreement and terms relating to ShuiKee's Deposit. Under this section, D-Design shall pay ShuiKee interest on the Deposit with Bank of America at 6% per annum, for each day the Deposit with Bank of America is not returned to ShuiKee, with interest beginning to accrue on June 1, 2014. The first interest payment was due August 1, 2014, and interest is payable monthly thereafter. *See* Section 28 of the Stock Purchase Agreement, **Ex. 1**.

20.     Under Section 28 of the Stock Purchase Agreement, if $1 million is not paid to ShuiKee within 60 days from the Closing Date (as defined in the Project Funding Loan Agreement), D-Design was required to immediately reimburse ShuiKee $17,000 for fees paid to a third-party to generate the financing documents and an additional $4,000 for costs incurred in connection with the opening of the escrow account with Bank of America.

21.     Section 30 discusses conversion and the consequences of D-Design's failure to pay the Purchase Price to Golden Essence.  If Golden Essence or Tai does not receive the First Installment within 120 days of the Closing Date, the Stock Purchase Agreement is automatically terminated and D-Design is responsible for paying a termination fee of $400,000 to Golden Essence and reimburse Golden Essence for all legal, accounting and banking fees incurred in connection with the transaction.

22.     The Stock Purchase Agreement became effective on May 2, 2014, which was the date ShuiKee deposited $1.9 million (the "Deposit") in an escrow account at Bank of America.

23.     D-Design subsequently returned to ShuiKee the amount of $873,000 on September 15, 2014 and the amount of $200,000 on May 28, 2015.

1    24.    Further D-Design never purchased GoLink stock from Golden Essence or the

2  business of Fabrique.

3  **THE PROJECT FUNDING LOAN AGREEMENT**

4    25.    D-Design and JC Funding entered into a Project Funding Loan Agreement (the

5  "Project Funding Loan Agreement"), dated October 14, 2014.  The parties to the Project

6  Funding Loan Agreement were JC Funding and D-Design.  A true and correct copy of the

7  Project Funding Loan Agreement is attached as **Exhibit "2"**.

8    26.    The purpose of the Project Funding Loan Agreement was for D-Design to

9  borrow from JC Funding a total of $11,050,000 loan (the "Loan") to finance  (i) the acquisition

10  of the existing business of Fabrique; (ii) the acquisition of a controlling interest of GoLink;

11  (iii) to refinance existing debt; and (iv) pay all costs, expenses and other amounts described in

12  Exhibit "A" to the Project Funding Loan Agreement.

13    27.    Exhibit "A" to the Project Funding Loan Agreement provides that the Project

14  Funding Loan proceeds would be used as follows:  (i) purchase the Net Assets of Fabrique for

15  $5,500,000; (ii) pay off the outstanding Citizens Bank debt of Fabrique in the amount of

16  $1,000,000; (iii) repatriate capital associated with Asian Activities at a cost of $1,000,000; (iv)

17  purchase the Net Assets of GoLink for $1,850,000; (v) invest in new South American Facility

18  for $500,000; (vi) establish an Interest Reserve for the Loan of $685,000; (vi) pay JC Funding

19  fees of $215,000; (vii) pay Advisory fees of $270,000; and (viii) pay Loan servicing fees of

20  $30,000.

21    28.    In order to facilitate the Loan, ShuiKee agreed to deposit $1 million into a

22  designated escrow account (the "Deposit" pursuant to the terms and conditions of the

23  Custodian Agreement.  *See* Project Funding Loan Agreement, **Ex. 2**, Recital "B".  The

24  Custodian Agreement describes the terms under which the Deposit shall be released.  *See*

25  Project Funding Loan Agreement, **Ex. 2**, Recital "C".  Upon satisfaction of the terms set forth

26  in the Custodian Agreement, JC Funding's obligations under Project Funding Loan Agreement

27  became of full force and effect.  *See* Project Funding Loan Agreement, **Ex. 2**, Recital "D".

1       29.     Section 9 of the Project Funding Loan Agreement, entitled "TERMINATION

2 OF AGREEMENT AND REFUND OF DEPOSIT", governs termination and refund of the

3 Deposit to ShuiKee. Pursuant to Section 9 of the Project Funding Loan Agreement in the event

4 ShuiKee has not received $1 million from JC Funding by Capital Release Date 1 as set forth

5 in the Draw Down Schedule in Exhibit "C" of the Project Funding Loan Agreement within

6 sixty (60) days from the Closing Date, ShuiKee may notify JC Funding of its failure to fund

7 the Loan.  Upon receipt of such notification, JC Funding shall have thirty (30) days to cure

8 such default.  If JC Funding does not timely cure the default, JC Funding will immediately

9 cause to be released the Collateral Agreement if recorded, any liens or encumbrances, all Loan

10 Documents (as defined in the Project Funding Loan Agreement) will become immediately

11 invalid and unenforceable by JC Funding, and Custodian Jery E. Barton of the Barton Law

12 Group (the "Custodian") shall take all actions on behalf of ShuiKee to make it whole in

13 accordance with the terms of the Custodian Agreement.

14 **THE CUSTODIAN AGREEMENT**

15       30.     In order to facilitate the $11,500,000 Loan, ShuiKee agreed to establish an

16 escrow account and to make the Deposit pursuant to the terms and conditions of the Custodian

17 Agreement.   On December 22, 2014, ShuiKee, JC Funding, and the Custodian entered into

18 a Custodian Agreement (the "Custodian Agreement"). A true and correct copy of the

19 Custodian Agreement is attached as **Exhibit "3"**. Pursuant to the Custodian Agreement

20 ShuiKee deposited $1,000,000 with the Custodian in accordance with the Project Funding

21 Loan Agreement.

22       31.     The Custodian Agreement references the issuance of an Instrument in the

23 amount of $5 million to be issued by Standard Chartered Bank or a comparable rated

24 bank.  This Instrument was to constitute part of the Loan.  Pursuant to the terms of the

25 Custodian Agreement, the cost associated with the Instrument was to be paid from the Deposit.

26       32.     To that end, the Custodian Agreement provides that as a pre-condition to the

27 release of any portion of the Deposit to cover the cost of the Instrument, the cost of the

1  Instrument is to be placed with a Settlement Agent by the name of Commercial Settlement

2  Services ("CSS").  CSS contractually agreed not to release the costs of the Instrument until

3  such time as the Instrument has been delivered and confirmed by the recipient bank.

4      33.     The Custodian was to evidence to ShuiKee its receipt of the Agreement with

5  CSS by executing the Affidavit attached to the Custodian Agreement as Exhibit "B".  The

6  Custodian likewise was to confirm to ShuiKee receipt of the Instrument by executing the

7  Affidavit attached to the Custodian Agreement as Exhibit "C".

8      34.     In Paragraph 10, the Custodian Agreement also references the issuance of

9  another Instrument referred to as an Irrevocable Conditional Bank Pay Order ("ICBPO") in the

10  amount of $1 million.

11      35.     Upon information and belief, the ICBPO was to be paid to the Custodian and

12  the funds used to cover the cost of another Instrument if JC Funding agreed to order another

13  Instrument.

14      36.     Upon information and belief, the ICBPO funds could be used to reimburse

15  ShuiKee for the Deposit used to pay the cost of the Instrument if JC Funding elected not to

16  order another Instrument pursuant to the Custodian Agreement.

17      37.     The use of the ICBPO to repay the Deposit is conditioned upon the Custodian

18  receiving instructions from JC Funding.  If JC Funding has not so instructed the Custodian by

19  the Capital Release Date 1 (as defined in the Project Funding Loan Agreement), the Custodian

20  has 72 hours to release and transmit the Deposit to ShuiKee, and shall notify JC Funding and

21  ShuiKee of Custodian's actions.

22      38.     The parties subsequently agreed to eliminate the requirement for a Settlement

23  Agent, i.e., CSS and modified the amount to be released to JC Funding. Pursuant to these

24  modifications Plaintiffs are informed and believe that on or about March 27, 2015, the

25  Custodian executed Exhibit "C" to the Custodian Agreement confirming receipt of the

26  Instrument as described in the Custodian Agreement and released $800,000 from the escrow

27  account to JC Funding.

- 7 -

1    39.    JC Funding never funded the Loan yet retained and never returned the $800,000

2    to ShuiKee.

3    **THE PROMISSORY NOTE[1]**

4    40.    On or about October 14, 2014, D-Design executed a Promissory Note in the

5    amount of $11,050,000 in favor of JC Funding for repayment of the Loan.

6    **PLAINTIFFS' DEMANDS FOR DEFENDANTS' PERFORMANCE**

7    41.    On or about June 8, 2017 and July 5, 2017, Plaintiffs gave notice to Defendants

8    regarding their breach of the Loan Documents and the parties' agreement relating to the

9    Transaction.

10    42.    Specifically, Plaintiffs stated that the Stock Purchase Agreement had been

11    automatically terminated and demanded D-Design's payment of the termination fee of

12    $400,000 to Golden Essence and for reimbursement of all legal, accounting and banking fees

13    incurred in connection with the transaction.

14    43.    Plaintiffs further demanded (1) confirmation of the issuance of the Instrument

15    per Paragraph 5 of the Custodian Agreement, (2) an accounting of the costs associated with

16    the Instrument if it was issued, or (3) an accounting of distribution of the funds released in

17    connection with the Instrument.

18    44.    Plaintiffs additionally gave notice that JC Funding was in default for failing to

19    fund the Loan pursuant to Section 9 of the Project Funding Loan Agreement and indicated that

20    if JC Funding did not cure this default within 30 days of notice, ShuiKee demanded: (1) return

21    of $827,000 owed to it, plus any interest, fees, costs, or any other amounts owed, (2) the release

22    of the Collateral Agreement, if recorded, and any liens or encumbrances, and (3) immediate

23    invalidation of the Loan Documents.

24

---

25    [1] Collectively, the Project Funding Loan Agreement, Collateral Agreement, Custodian
Agreement, and Promissory Note are referred to as the "Loan Documents". For purposes of
26    the Complaint, the Collateral Agreement has not been included as an attachment. There also
was a Working Capital Promissory Note and a Working Capital Loan Agreement associated
27    dated October 14, 2014 that are not included for purposes of the Complaint.

1    45.    To date, Defendants have failed to respond to Plaintiffs' demands.

2    **FIRST CLAIM FOR RELIEF**

3    **(Fraud/Misrepresentation - Against all Defendants)**

4    46.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

5    Complaint as though fully set forth herein.

6    47.    Defendants made false representations to Plaintiffs regarding the Loan, the

7    Deposit, and the Transaction. Specifically, Defendants falsely represented that the Deposit

8    would be used to fund the Loan, that ShuiKee would be repaid in full, and that Defendants had

9    the ability to consummate the Transaction.

10    48.    Defendants knew or believed that these representations were false or had an

11    insufficient basis of information for making these representations.

12    49.    Defendants intended to induce Plaintiffs to act upon these representations by

13    having ShuiKee to wire the Deposit.

14    50.    Plaintiffs reasonably and justifiably relied upon Defendants' representations

15    that the entire Deposit would be repaid and the Loan would be funded when Plaintiffs entered

16    into the parties' agreement relating to the Transaction and ShuiKee provided the Deposit.

17    51.    Defendants have wrongly retained $827,000 of the Deposit paid by ShuiKee

18    despite Crossland (through JC Funding) failing to ever fund the Loan and Dotson (through D-

19    Design) failing to purchase GoLink and Fabrique.

20    52.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

21    damaged in a substantial sum in excess of $75,000.00, the exact amount of which will be set

22    forth at the time of trial in this matter.

23    53.    Defendants' actions were oppressive, fraudulent, and/or malicious, and

24    therefore Plaintiffs are entitled to an award of punitive and exemplary damages.

25    54.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

26    forced to retain the services of counsel to prosecute this matter and are entitled to an award of

27    reasonable attorneys' fees and costs.

1   **SECOND CLAIM FOR RELIEF**

2   **(Conversion - Against Crossland and JC Funding)**

3   55.   Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

4   Complaint as though fully set forth herein.

5   56.   Crossland and JC Funding have exerted wrongful dominion over a portion of

6   the Deposit paid by ShuiKee that was earmarked to fund the Loan but then absconded with by

7   Defendants.

8   57.   Crossland and JC Funding's acts were in denial of, or inconsistent with,

9   ShuiKee's rights to the Deposit.

10   58.   Crossland and JC Funding have failed and/or refused to return the Deposit in

11   full to ShuiKee.

12   59.   Defendants have wrongly retained $827,000 of the Deposit paid by ShuiKee

13   despite Crossland (through JC Funding) failing to ever fund the Loan and Dotson (through D-

14   Design) failing to purchase GoLink and Fabrique.

15   60.   As a direct and proximate result of Crossland and JC Funding's conduct,

16   Plaintiffs have been damaged in a substantial sum in excess of $75,000.00, the exact amount

17   of which will be set forth at the time of trial in this matter.

18   61.   Crossland and JC Funding's actions were oppressive, fraudulent, and/or

19   malicious, and therefore Plaintiffs are entitled to an award of punitive and exemplary damages.

20   62.   As a direct and proximate result of Crossland and JC Funding's conduct,

21   Plaintiffs have been forced to retain the services of counsel to prosecute this matter and are

22   entitled to an award of reasonable attorneys' fees and costs.

23   **THIRD CLAIM FOR RELIEF**

24   **(Civil Conspiracy - Against all Defendants)**

25   63.   Plaintiff repeats and realleges the preceding allegations and by this reference

26   incorporates the same as though fully set forth herein.

27

1       64.    Upon information and belief, Defendants acting in concert conspired and

2   agreed with each other to defraud Plaintiffs by orchestrating a scheme through which

3   Defendants would have Tai, through his company ShuiKee, contribute $1.9 million Deposit

4   purportedly to facilitate funding for the Loan that would then be used to purchase GoLink and

5   Fabrique, among other things.

6       65.    Defendants have wrongly retained $827,000 of the Deposit paid by ShuiKee

7   despite Crossland (through JC Funding) failing to ever fund the Loan and Dotson (through D-

8   Design) failing to purchase GoLink and Fabrique.

9       66.    As a direct and proximate result of the conduct by Defendants, Plaintiff has

10   been damaged in a substantial sum, in excess of $75,000.00.

11       67.    Plaintiff has, by reason of the foregoing, been required to obtain the services of

12   an attorney and is entitled to recover its reasonable attorney fees and costs from Defendants.

13                  **FOURTH CLAIM FOR RELIEF**

14            **(Negligent Misrepresentation - Against all Defendants)**

15       68.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

16   Complaint as though fully set forth herein.

17       69.    Defendants made false representations to Plaintiffs regarding the Loan, the

18   Deposit, and the Transaction. Specifically, Defendants falsely represented that the Deposit

19   would be used to fund the Loan, that ShuiKee would be repaid in full, and that Defendants had

20   the ability to consummate the Transaction.

21       70.    Defendants made these misrepresentations in the course of business and for a

22   transaction in which they had a pecuniary interest.

23       71.    Defendants' misrepresentations were made for the guidance of Plaintiffs in

24   Transaction.

25       72.    Plaintiffs reasonably and justifiably relied upon Defendants' representations

26   that the entire Deposit would be repaid and the Loan would be funded when Plaintiffs entered

27   into the parties' agreement relating to the Transaction and ShuiKee provided the Deposit.

1    73.    Defendants did not exercise reasonable care or competence in obtaining or

2    communicating information regarding the Loan, the Deposit, and the Transaction to Plaintiffs.

3    74.    Defendants have wrongly retained $827,000 of the Deposit paid by ShuiKee

4    despite Crossland (through JC Funding) failing to ever fund the Loan and Dotson (through D-

5    Design) failing to purchase GoLink and Fabrique

6    75.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

7    damaged in a substantial sum in excess of $75,000.00, the exact amount of which will be set

8    forth at the time of trial in this matter.

9    76.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

10   forced to retain the services of counsel to prosecute this matter and are entitled to an award of

11   reasonable attorneys' fees and costs.

12                              **FIFTH CLAIM FOR RELIEF**

13                          **(Accounting - Against all Defendants)**

14   77.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

15   Complaint as though fully set forth herein.

16   78.    Based upon the fiduciary relationship, the confidential relationship, the

17   existence of mutual and/or complicated accounts, Plaintiffs are entitled to an accounting of all

18   of the money entrusted with Defendants, and specifically the funds from the Deposit.

19   79.    Plaintiffs have demanded an accounting but Defendants have failed and/or

20   refused to provide an accounting.

21   80.    Defendants are in sole possession of the records regarding the use of funds from

22   the Deposit after they were released by the Custodian.

23   81.    Plaintiffs request that Defendants segregate the remaining funds from the

24   Deposit, if any, to protect the money from any further misuse, dissipation and loss.

25   82.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been

26   forced to retain the services of counsel to prosecute this matter and are entitled to an award of

27   reasonable attorneys' fees and costs.

1

## SIXTH CLAIM FOR RELIEF

2

### (Breach of Contract for Stock Purchase Agreement - Against D-Design)

3      83.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

4 Complaint as though fully set forth herein.

5      84.     Tai and Golden Essence and D-Design entered into a valid and enforceable

6 agreement, specifically, the Stock Purchase Agreement.

7      85.     D-Design has breached its obligation to purchase the shares of GoLink stock

8 from Golden Essence. Specifically, D-Design never made the First Installment to Golden

9 Essence or Tai pursuant to the Stock Purchase Agreement.

10      86.     D-Design's breach of its obligation excuses Tai and Golden Essence from

11 transferring the GoLink shares under the Stock Purchase Agreement pursuant to Section 30 as

12 the Stock Purchase Agreement automatically terminated based on D-Design's breach.

13      87.     Accordingly, D-Design is liable to pay a termination fee of $400,000 to Golden

14 Essence and reimburse Golden Essence for all legal, accounting and banking fees incurred in

15 connection with the transaction pursuant to Section 30 of the Stock Purchase Agreement.

16      88.     Further, D-Design's breach renders it liable to pay accrued interest on the

17 Deposit 6% per annum on $1.9 million paid by ShuiKee for 136 days, which equals

18 $43,066.67, and 6% per annum on $1.027 million for 255 days, which equals $43,647.50.

19      89.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been

20 damaged in a substantial sum in excess of $75,000.00, the exact amount of which will be set

21 forth at the time of trial in this matter.

22      90.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been

23 forced to retain the services of counsel to prosecute this matter and are entitled to an award of

24 reasonable attorneys' fees and costs.

25

26

27

1                              **SEVENTH CLAIM FOR RELIEF**

2               **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

3                   **for Stock Purchase Agreement - Against D-Design)**

4        91.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

5 Complaint as though fully set forth herein.

6        92.     Every contract entered into in Nevada imposes upon the contracting parties a

7 duty of good faith and fair dealing, which prohibits one party from conducting itself in a

8 manner that is unfaithful to the purpose of the contract.

9        93.     Tai and Golden Essence and D-Design entered into the Stock Purchase

10 Agreement, which is a valid and enforceable agreement subject to the duty of good faith and

11 fair dealing.

12        94.     Based on D-Design's breach of its obligation to purchase the shares of GoLink

13 stock from Golden Essence by making the First Installment to Golden Essence or Tai pursuant

14 to the Stock Purchase Agreement, D-Design has breached the covenant of good faith and fair

15 dealing and conducted itself in a manner unfaithful to the purpose of the Stock Purchase

16 Agreement, which denied Golden Essence and Tai's justified expectations.

17        95.     As a direct and proximate result of D-Design's conduct, Plaintiffs have been

18 damaged in a substantial sum in excess of $75,000.00, the exact amount of which will be set

19 forth at the time of trial in this matter.

20        96.     As a direct and proximate result of D-Design's conduct, Plaintiffs have been

21 forced to retain the services of counsel to prosecute this matter and are entitled to an award of

22 reasonable attorneys' fees and costs.

23                                **EIGHTH CLAIM FOR RELIEF**

24       **(Claim for Unjust Enrichment for Unreturned Deposit Funds - Against all Defendants)**

25        97.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this

26 Complaint as though fully set forth herein.

27        98.     ShuiKee conferred a benefit upon the Defendants by paying the Deposit.

99.      Defendants appreciated this benefit and have unjustly retained $827,000 of the Deposit paid by ShuiKee against the fundamental principles of justice, equity, and good conscience.

100.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in a substantial sum in excess of $75,000.00, the exact amount of which will be set forth at the time of trial in this matter.

101.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been forced to retain the services of counsel to prosecute this matter and are entitled to an award of reasonable attorneys' fees and costs

WHEREFORE, Plaintiff prays for the following:

1.      For general damages in excess of $75,000.00;

2.      For punitive damages;

3.      For all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiffs regarding the commencement and prosecution of this action;

4.      For an accounting of the funds from the Deposit; and

5.      For such other and further relief as the Court deems just and proper.

DATED this 4th day of October, 2017.

HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON


  /s/ Andrea M. Gandara
RICHARD F. HOLLEY, ESQ.
Nevada Bar No. 3077
ANDREA M. GANDARA, ESQ.
Nevada Bar No. 12580
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

*Attorneys for Plaintiffs Gary Tai,
ShuiKee Company Limited, and Golden
Essence Global Limited*

12222-01/1943987.docx

- 15 -

1    **<u>VERIFICATION OF COMPLAINT</u>**

2        I, Gary Tai, do hereby swear/affirm under penalty of perjury under the laws of the

3    United States that:

4        1.    I am a Plaintiff ("<u>Plaintiff</u>") in the above-entitled action; also, I am a

5    representative of Plaintiffs, ShuiKee Company Limited and Golden Essence Global Limited;

6        2.    I have read the foregoing Complaint and know the contents thereof;

7        3.    The same is true of my own knowledge except as to those matters therein stated

8    on information and belief, and as to the matter I believe them to be true.

9        DATED this $\partial\partial$ day of _Sept_ , 2017.

10

11

12                     GARY TAI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- 16 -

1

## **EXHIBITS INDEX**

2      Exhibit 1      Stock Purchase Agreement

3      Exhibit 2      Project Funding Loan Agreement

4      Exhibit 3      Custodian Agreement

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27